# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

**BRENDA BROWN,**

        **Plaintiff,**

**v.**                                                      **Case 1:13-cv-01242-cgc**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

## ORDER REVERSING THE DECISION OF COMMISSIONER AND REMANDING PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)

Lisa Lynn Haywood ("Haywood") filed this action to obtain judicial review of her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434 and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1385. By consent of the parties, this case has been referred to the United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.

Haywood filed her application on September 28, 2009. Her claims were denied initially and upon reconsideration. A hearing was held on July 13, 2012 before an Administrative Law Judge ("ALJ"). On March 2, 2012, the ALJ found that Haywood was not disabled under the Act. The Appeals Council then denied Haywood's request for review. Thus, the ALJ's decision became the Commissioner's final decision. Haywood then filed this action requesting reversal of the

Commissioner's decision.

On January 15, 2014, a Suggestion of Death was filed with this Court stating that Haywood died on December 19, 2013, that she was survived by two minor children, and that, in accordance with 20 C.F.R. § 416.542(b), this claim may not be extinguished. On March 5, 2014, the District Court granted Plaintiff's motion to substitute Brenda Brown as the Plaintiff.

For the reasons set forth herein, the decision of the Commissioner is REVERSED, and the action is REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for a reevaluation of Dr. Cran-Carty and Dr. Smithson's medical source opinions and for consideration of the new and material evidence contained in Exhibit 23F.

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which she was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g); *Wyatt v. Secretary of Health & Human Services*, 974 F.2d 680, 683 (6th Cir.1992); *Cohen v. Secretary of Health & Human Services.*, 964 F.2d 524, 528 (6th Cir.1992), and whether the correct legal standards were applied, *Landsaw v. Secretary of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir.1986).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. *See Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). When substantial evidence supports the Commissioner's determination,

it is conclusive, even if substantial evidence also supports the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born on January 29, 1967 and was forty-one-years old on the alleged disability onset date of January 18, 2009. (R. at 14, 23). She has at least a high school education and is able to communicate in English. (R. at 23). She has past relevant work as a licensed practical nurse, a fast food worker, a food service worker, and a home attendant. (R. at 23).

The ALJ determined as follows: (1) the claimant meets the insured status requirements of the Act through December 31, 2013; (2) the claimant has not engaged in substantial gainful activity since January 18, 2009, which is the alleged onset date; (3) the claimant has the following severe impairments: seizure disorder; cerebrovascular accident; hypertension; degenerative disc disease; tears of the distal supraspinatus tendon in the bilateral shoulders; chronic obstructive pulmonary disease ("COPD"); and, anxiety; (4) the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) after careful consideration of the entire record, the claimant is found to have the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently; can sit, stand, or walk for six hours in an eight hour workday with normal breaks; can occasionally push or pull with the bilateral upper extremities; no overhead reaching with the right upper extremity; occasional overhead reaching with the left upper extremity; occasional climbing of ramps or stairs and no climbing of ladders/ropes/scaffolds; occasional balancing or crawling; no work in a setting which requires driving motorized vehicles; no work around unprotected heights and moving machinery; no work around pulmonary irritants and temperature extremes; ability to understand, remember, and carry out one, two and three step instructions; can

3

maintain concentration and attention for at least two hour periods of time; can interact appropriately with coworkers and supervisors, but only occasional interaction with the public; and, can tolerate no more than occasional changes in the work environment or duties; (6) the claimant is unable to perform any past relevant work; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills; (8) considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform; and, (9) the claimant has not been under a disability, as defined by the Act, from January 18, 2009 through the date of the ALJ's decision. (R. at 16-25).

The Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. *Born v. Secretary of Health & Human Services.*, 923 F.2d 1168, 1174 (6th Cir.1990). The initial burden of going forward is on the claimant to show that she is disabled from engaging in her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. *Id.*

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors,

if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.[1]

4. An individual who can perform work that he or she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and RFC must be considered to determine if other work can be performed.

*Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301 (6th Cir. 1988). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. §§ 404.1520 & 416.920.

Here, the sequential analysis proceeded to the fifth step. At step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's RFC . . . and vocational profile." *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). Ultimately, the ALJ found that Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the national economy, and, therefore, was not disabled within the meaning of the Act.

On appeal to this Court, Plaintiff asserts that the ALJ's decision was not supported by substantial evidence for two reasons. First, Plaintiff argues that the ALJ erred in according "little weight" to the opinion from her treating physician, Dr. Wendy Cran-Cardy ("Dr. Cran-Cardy"). Second, Plaintiff claims that the ALJ erred in according "little weight" to the opinion of her

---

[1] Before then proceeding to step four of the sequential evaluation process, the ALJ must determine the claimant's RFC pursuant to 20 C.F.R. § 404.1520(e) and § 416.920(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe pursuant to 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e) & 416.945.

psychological examiner, Dr. Gary Smithson ("Dr. Smithson"), on the basis of insufficient treatment notes in the record. Plaintiff further asserts that the ALJ erred in failing to consider additional reports that she submitted while the record remained open post-hearing and that the ALJ incorrectly determined that the other work of which she is capable due to her RFC exists in significant numbers in the national economy.

**I. Medical Source Opinion Evidence**

Plaintiff argues that the ALJ erred in weighing the medical source opinion evidence in the record in crafting her RFC. The ALJ's assessment of medical source opinions must follow 20 C.F.R. § 404.1527(c) and § 416.927(c), which contain six factors. First, the ALJ must examine the relationship between the patient and medical professional, as more weight is accorded to an examining source. 20 C.F.R. §§ 404.1527(c)(1) & 416.927(c)(1).

Second, the ALJ must consider whether the medical professional actually treated the patient, as "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [her] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). If a treating source's opinion on the nature and severity of the impairment(s) is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). If a treating source's opinion is not given controlling weight, the ALJ must consider the length of the treatment relationship and the frequency of examination along with the nature and extent of the

treatment relationship to determine if his or her opinion should be given more weight than a nontreating source. 20 C.F.R. §§ 404.1527(c)(2), (c)(2)(I)-(ii), 416.927(c)(2) & 416.927(c)(2)(I)-(ii). The ALJ must "always give good reasons" in the notice of determination or decision for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2) & 416.927(c)(2).

Third, the ALJ must consider the amount of relevant evidence the medical source provides to support the opinion, particularly medical signs and laboratory findings, to determine the amount of weight to be given to the opinion. 20 C.F.R. §§ 404.1527(c)(3) & 416.927(c)(3). As to nontreating sources, the weight accorded to their opinions will "depend on the degree to which they provide supporting explanations for their opinions." *Id*. The ALJ must also "evaluate the degree to which these opinions consider all of the pertinent evidence in [the] claim, including opinions of treating and other examining sources." *Id*.

Fourth, the ALJ must consider the consistency of the opinion, as the more consistent an opinion is with the record as a whole, the more weight it will be given. 20 C.F.R. §§ 404.1527(c)(4) & 416.927(c)(4). Fifth, the ALJ generally gives more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to an opinion of a source who is not a specialist. 20 C.F.R. §§ 404.1527(c)(5) & 416.927(c)(5). Sixth, the ALJ will consider any factors the claimant or others bring to his or her attention, or of which he or she is aware, which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(6) & 416.927(c)(6).

### A. Dr. Cran-Carty

The ALJ considered Dr. Cran-Carty's opinion in her determination of Plaintiff's RFC. (R. at 22). She correctly found that Dr. Cran-Carty was Plaintiff's treating physician. (*Id*.) In determining that her opinion should be given "little weight" instead of "controlling weight," the ALJ

noted that Plaintiff had only recently begun treatment with this provider, which does address the length of treatment relationship. (*Id*.). The ALJ also noted that Dr. Cran-Carty's opinion "appears to be based largely on the claimant's subjective complaints rather than on a long-standing treatment relationship including objective medical testing." (*Id*.) This statement briefly addresses the nature of the treatment relationship; however it does not address the frequency or extent of the treatment relationship as required. *See* 20 C.F.R. §§ 404.1527(c)(2), (c)(2)(I)-(ii), 416.927(c)(2) & 416.927(c)(2)(I)-(ii).

The ALJ further did not address the amount of relevant evidence the medical source provides to support the opinion, particularly medical signs and laboratory findings. A review of Dr. Cran-Carty's notes mention her reliance on cervical and lumbar MRIs as the basis for her proposed limitations. (R. at 800, 807). Her treatment notes also contain results of laboratory testing, radiology reports, and trigger point injections. (R. at 794-806). The ALJ stated that Dr. Cran-Carty's opinion "is not fully supported by the objective evidence, the treatment notes . . ., or the medical evidence of record as a whole"; however, the ALJ did not elaborate on how Dr. Cran-Carty's opinions were inconsistent with the record or not supported by it. While the Commissioner posits that these records do not support Dr. Cran-Carty's limitations, such a decision is reserved for the ALJ, who must provide "good reasons" for determining that a treating physician's opinion is not entitled to controlling weight. The ALJ's brief consideration of Dr. Cran-Cardy's opinions without any discussion on several required factors is insufficient.

Accordingly, the Court concludes that the ALJ erred in weighing the medical source opinion testimony of Dr. Cran-Carty. Thus, the decision of the Commissioner is hereby REVERSED, and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for the ALJ to reconsider Dr. Cran-

Carty's medical source opinions under 20 C.F.R. § 404.1527(c) and § 416.927(c) in crafting Plaintiff's RFC. The ALJ should further review any portions of the record which may be weighed differently in view of the reevaluation of Dr. Cran-Carty's opinions. If the ALJ determines that Plaintiff's RFC should be adjusted upon reevaluation, the ALJ should additionally reconsider Step Five of the sequential analysis.

### B. Dr. Smithson

Next, the ALJ considered Dr. Gary Smithson's opinion in her determination of Plaintiff's RFC. The ALJ correctly noted that Dr. Smithson conducted a psychological examination of Plaintiff. (R. at 665-671).

With respect to the consistency of Dr. Smithson's opinions with the record as a whole, the ALJ stated that the "record contains no treatment notes which would substantiate such a limited level of functioning." (R. at 23). Plaintiff does not raise any argument as to materials that were contained in the record that the ALJ did not consider. Thus, the Court does not find that the ALJ erred in this finding. However, Plaintiff does contend that she attempted to provide additional records from the Carey Counseling Center that were inadvertently not made part of the record and would have supported Dr. Smithson's conclusions. This is not a question for substantial-evidence review. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (stating that evidence not part of the record before the ALJ cannot be considered upon substantial-evidence review). Thus, the Court will address that issue, *infra*, Section I.C.

With respect to whether Dr. Smithson relied upon medical signs and laboratory findings and provided supporting explanations for his opinions, the ALJ stated that "Dr. Smithson's opinion is overly restrictive and is based solely on his own evaluation of the claimant and her own reported

9

limitations and presentation at that evaluation." (R. at 23). Yet while Dr. Smithson does not to have relied upon any laboratory findings in his psychological examination, he did provide supporting explanations not only based upon Plaintiff's own reports but also other medical records detailing various injuries, including a traumatic brain injury and grand mal seizures following an automobile accident that she states precipitated her disability. (R. at 665-666). He additionally used standard diagnostic criteria from the DSM-IV-TR for her diagnoses. (R. at 671). Thus, the Court finds that the ALJ did not accurately state all of the bases for Dr. Smithson's opinions.

Accordingly, the Court concludes that the ALJ erred in weighing the medical source opinion testimony of Dr. Smithson. Thus, the decision of the Commissioner is hereby REVERSED, and REMANDED pursuant to Sentence Four of 42 U.S.C. § 405(g) for the ALJ to reconsider Dr. Smithson's medical source opinions under 20 C.F.R. § 404.1527(c) and § 416.927(c) in crafting Plaintiff's RFC. The ALJ should further review any portions of the record which may be weighed differently in view of the reevaluation of Dr. Smithson's opinions. If the ALJ determines that Plaintiff's RFC should be adjusted upon reevaluation, the ALJ should additionally reconsider Step Five of the sequential analysis.

### C. Additional Medical Source Opinion Evidence

Finally, Plaintiff contends that she attempted to present additional medical source opinion evidence from Carey Counseling Center ("CCC Records") which was inadvertently not included in the record before the ALJ. Specifically, Plaintiff states that the ALJ did not have the CCC Records as of the January 13, 2012 hearing. (R. at 56). The ALJ permitted Plaintiff fourteen days to obtain the records and submit them during which time she would keep the record open. (R. at 56, 78). The ALJ further instructed Plaintiff's counsel to request more time if necessary to provide the records.

(*Id.*) Plaintiff's counsel requested the CCC Records on the same date as the ALJ hearing. (R. at 304). Plaintiff then sent them by facsimile to the ALJ on January 25, 2012, which was fourteen days after the ALJ hearing and therefore within the time set forth by the ALJ for the record to remain open. (R. at 289-302). However, Plaintiff asserts that she was unaware that the ALJ apparently did not receive and consider the CCC Records until she received the March 9, 2012 decision.

The Commissioner responds that the Appeals Council considered the CCC Records contained in Exhibit 23F of the administrative record and found that the additional evidence did not provide a basis for changing the ALJ's decision. (R. at 1-2, 4, 809-17). Thus, the Commissioner argues that Plaintiff could only argue at this Court for the case to be remanded based upon new and substantial evidence under Sentence Six of 42 U.S.C. § 405(g), which she did not do in her initial briefing. However, in her Reply, Plaintiff clarifies that she does seek remand for consideration of this evidence.

Upon review, Sentence Six provides, in pertinent part, that the Court "may at any time order additional evidence to be take before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Materiality requires that there be a "reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new [evidence]." *Salyer v. Comm'r of Soc. Sec.*, 574 F. App'x 595, 597 (citing *Hallon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2006)).

As to the three requirements under Sentence Six, the Court concludes that the evidence is new as it was not contained in the record before the ALJ. The Court also concludes that good cause

11

exists because the record reflects that Plaintiff did provide the ALJ with the records within the fourteen-day period during which the ALJ stated that the record would remain open. Thus, the crux of whether remand under Sentence Six is appropriate is whether the CCC Records are material.

At the hearing before the ALJ, she noted in the discussion of Plaintiff's desire to obtain the CCC Records that if the Plaintiff "had been seeing a counselor for a year and a half, obviously that would help support what [she was] seeing" in the record. (R. at 77). The CCC Records reflect that Plaintiff had been receiving mental health treatment from March 28, 2011 until December 7, 2011. (R. at 809-813). Although her treatment had not been going on for a year and a half, she was treated on five occasions over approximately seven months. (*Id.*) Although the ALJ stated in considering Dr. Smithson's opinions that the "record contains no treatment notes which would substantiate such a limited level of functioning," the Court finds that the CCC Records are material as they are treatment notes of fairly significant mental health treatment that should be considered along with Dr. Smithson's findings. The Court further concludes that the ALJ stated herself that counseling records would "obviously" provide "support" to the other sources in the record, which additionally bolsters a finding that they are material. Accordingly, the Court finds that this case meets the criteria under Sentence Six of 42 U.S.C. §405(g) for remand for the taking of additional evidence in addition to the criteria under Sentence Four of 42 U.S.C. §405(g) for remand for agency reconsideration.

In cases such as this where it has been established that remand is appropriate both under Sentence Four for agency reconsideration and under Sentence Six for new and material evidence, courts face a jurisdictional conundrum, as the precise method or methods of remand is important due to its jurisdictional implications. *See Faucher v. Sec'y of Health & Human Srvs.*, 17 F.3d 171, 175 (6th Cir. 1994). A remand under Sentence Four of 42 U.S.C. §405(g) is a post-judgment remand

where the Court relinquishes jurisdiction; a remand under Sentence Six of 42 U.S.C. §405(g) is a pre-judgment remand where the Court retains jurisdiction. *Id*.

Courts that have considered this question have utilized two approaches. First, some courts have ordered a "dual basis remand" while retaining jurisdiction over the case under Sentence Six. *Jackson v. Chater*, 99 F.3d 1086, 1097 (11th Cir. 1996) (concluding that 42 U.S.C. § 405(g) permits dual basis remand and requires the district court to retain jurisdiction due to the Sentence Six ground for remand); *see also Yolanda Jones v. Comm'r of Soc. Sec.*, No. 1:14-cv-240, 2015 WL 4652638, at *9 (S.D. Ohio Aug. 5, 2015) (permitting dual-basis remand with the district court retaining jurisdiction as a result of the Sentence Six prong); *Richard Dale Crawford v. Comm'r of Soc. Sec.*, No. 1:13-cv-451, 2014 WL 6606135, at *12 (S.D. Ohio Nov. 20, 2014) (same); *Heather Sizemore v. Comm'r of Soc. Sec.*, No. 1:13-cv-521, 2014 WL 4549020, at *24 (Sept. 12, 2014) (same); *Tia Reeves v. Comm'r of Soc. Sec.*, No. 1:13-cv-325, 2014 WL 2434112, at *9 (May 29, 2014) (same); *Stephanie Banik v. Comm'r of Soc. Sec.*, No. 1:11-cv-342, 2012 WL 2190816, at *17 (June 14, 2012) (same); *Tyrone Sturgeon v. Comm'r of Soc. Sec.*, No. 1:08-cv-510, 2009 WL 2005276, at *17 (July 9, 2009); *Jeannie B. Harthun v. Comm'r of Soc. Sec.*, No. 1:07-cv-595, 2008 WL 2831808, at *8 n.6 (July 21, 2008) (acknowledging the possibility for dual-basis remands under *Jackson* but finding that the plaintiff failed to demonstrate a Sentence Six basis for remand).

Second, other courts have found it to be more appropriate to order a Sentence Four remand only and to relinquish jurisdiction but order that the ALJ consider additional evidence upon remand. *Melvin Lynn Huber v. Comm'r of Soc. Sec.*, No. 07-14588, 2009 WL 111738, at *9-*12 (E.D. Mich. Jan 15, 2009) (citing *Faucher v. Sec'y of Health & Human Srvs.*, 17 F.3d 171, 175 (6th Cir. 1994); *see also Timothy W. Demars v. Comm'r of Soc. Sec.*, No. 11-15394, 2013 WL 1326423, at *12

(E.D.Mich. Feb. 4, 2013). In *Huber*, the Court found that this approach was particularly preferable if the "new sentence six material . . . is almost inseparably connected to the basis of the sentence four remand." *Id.* at *11. Further, the *Huber* court concluded that a dual basis remand could be "jurisdictionally confusing," requiring a determination of "whether relief at the administrative level was based on sentence four grounds, sentence six grounds, or some combination of the two," and that the Sentence Four remand with an order to consider additional evidence "get[s] everything right in one proceeding" and eliminates the jurisdictional confusion. *Id.* (citing *Faucher*, 17 F.3d at 175). Finally, the *Huber* court opined that the United States Court of Appeals in *Faucher* had "provided a clean, simple remedy that gives Plaintiff a full and fair opportunity to have a single hearing at which all material is considered," and that the *Faucher* method should be followed instead of "an Eleventh Circuit case—however well-reasoned it might be." *Id.* at *12.[2]

Upon review, the Court is compelled by the *Huber* court's reasoning that, when a Plaintiff satisfies the grounds for both a Sentence Four and a Sentence Six remand under 42 U.S.C. §405(g), and when, as is the case here, the new and material evidence (the CCC Records) is inseparably connected to the basis of the Sentence Four remand for reconsideration (Dr. Smithson's opinions on

---

[2] Although the *Huber* court appropriately seeks all possible guidance from the opinions of this Circuit, it is important to note that in *Faucher*, the United States Court of Appeals for the Sixth Circuit did not squarely address a dual-basis remand because the plaintiff had not satisfied the requirements for both a Sentence Four and Sentence Six remand. 17 F.3d at 175; *see also Huber*, 2009 WL 111738 at *11. Instead, the *Faucher* court only accepted that remands under Sentence Four could also order new and additional evidence be considered upon remand. *Id.* (holding that "remands under both sentence four and sentence six of § 405(g) can involve the taking of additional evidence."). Thus, while *Faucher* contains clear and important guidance in this Circuit, and while the *Huber* court found it to be most persuasive, it does not appear to be entirely dispositive of the issue, thus requiring this Court to examine the approaches of other courts when presented with cases where the plaintiff does satisfy the requirements of both a Sentence Four and Sentence Six remand.

14

Plaintiff's mental health and any support therefore), the clean, simple remedy is to remand pursuant to Sentence Four of 42 U.S.C. §405(g) and order the ALJ to consider the new and material evidence contained in the CCC Records on remand. As with the reconsideration of Dr. Cran-Carty and Dr. Smithson's medical source opinions, the ALJ should review her determination of Plaintiff's updated RFC in light of the CCC Records. The ALJ should further review any portions of the record which may be weighed differently in view of the CCC Records. If the ALJ determines that Plaintiff's RFC should be adjusted upon reevaluation, the ALJ should additionally reconsider Step Five of the sequential analysis.[2]

## II. Standing

Finally, this Court was required to consider the issues raised by Haywood's death, which occurred during the pendency of this appeal, and the substitution of Brown on her behalf. Before entering this Order Reversing the Decision of the Commissioner, this Court ordered additional briefing on the question of whether Brown had standing in this Court to pursue Haywood's SSI or DIB benefits. The parties fully briefed this issue for the Court to complete its consideration of the appeal. Ultimately, as the case is being remanded, the Court concludes that the ALJ should be the first to address this question on remand and should determine if Brown has standing to proceed on Haywood's SSI and DIB claims.

---

[2] Plaintiff additionally raised the question of whether, under Step Five, the ALJ erred in finding that there were a significant number of jobs in the national economy for which she was qualified. As the Court has reversed and remanded this case for reevaluation of Dr. Cran-Carty and Dr. Smithson's opinions and for consideration of the new and material evidence contained in the CCC Records in crafting Plaintiff's RFC, the Court declines to consider this question at this time.

**III. Conclusion**

For the reasons set forth herein, the Decision of the Commissioner is REVERSED, and the case is REMANDED pursuant to Sentence Four of 42 U.S.C. §405(g) for reconsideration of Dr. Cran-Carty and Dr. Smithson's medical source opinions and for consideration of the new and material evidence in the CCC Records.

**IT IS SO ORDERED** this 16th day of February, 2017.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE
